UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
AFFILIATED RECORDS INC.,              :
                                      :
                       Plaintiff,     :      09 Civ. 9938 (KBF)
                                      :
            -v-                       :      MEMORANDUM OPINION
                                      :      & ORDER
JAYCEON TAYLOR, p/k/a THE GAME, BLACK :
WALL STREET RECORDS, INC., CZAR       :
ENTERTAINMENT, INC., 101 DISTRIBUTION, :
LLC, and GOLDTONE ENTERTAINMENT, LLC, :
                                      :
                       Defendants.    :
                                      :
------------------------------------- :
                                      X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAY 14 2012

KATHERINE B. FORREST, District Judge:

In 2009, Affiliated Records Inc. ("Affiliated") filed a copyright infringement and unjust enrichment action against Jayceon Taylor p/k/a "The Game" ("Taylor"), Black Wall Street Records, Inc.[1] ("BWS"), Czar Entertainment, Inc. ("Czar"), 101 Distribution, LLC ("101")[2] and Goldtone Entertainment, LLC ("Goldtone") (with the exception of 101, referred to herein as

---

[1] Moving Defendants contend that the proper defendant is Black Wall Street Records, LLC. (E.g., Defs.' Mem. at 2; see also Jekielek Decl. Ex. D. ("Taylor Dep.") at 8:24-9:22.)

[2] 101 is not a party to either of the instant motions. On March 8, 2012, this Court granted Koerner & Associates, LLC's motion to withdraw as counsel for 101 and directed 101 to obtain replacement counsel within 30 days or be subject to an entry of default. (Docket No. 48 (citing HCC, Inc. v. RH & M Machine Co., 96 Civ. 4920 (PKL), 1998 U.S. Dist. LEXIS 10977, at *4 (S.D.N.Y. July 20, 1998)).) To date, no replacement counsel has appeared in this action on behalf of 101. On April 30, 2012, this Court issued an order directing each of plaintiff and Goldtone - which has a cross-claim against 101 - to move for default judgment against 101 within 14 days or face dismissal of its claim(s) against 101 for failure to prosecute. (Docket No. 60.)

the "Moving Defendants"). The alleged infringement relates to 12 songs on four albums ("the Songs") that plaintiff claims Michael Dowell, a respected recording artist, wrote and performed while under an exclusive recording agreement with plaintiff. (Am. Compl. ¶¶ 13-23.) Plaintiff has copyright registrations for the lyrics of the Songs. (See, e.g., id. ¶ 35, Ex. A.) Plaintiff claims that, without authorization, defendants collectively used, produced, distributed and sold the Songs in violation of plaintiff's exclusive rights and were unjustly enriched as a result of such conduct. (Id. ¶¶ 18, 41, 70-76.)

The Moving Defendants have now moved for summary judgment on all of plaintiffs' claims;[3] plaintiff has crossed-moved for partial summary judgment on Moving Defendants' liability for copyright infringement. For the reasons set forth below, both motions are GRANTED in part and DENIED in part.

## STATEMENT OF FACTS

Michael Hentosh owns Affiliated (Defs.' Opposing Stmt. of Material Facts ("OSMF") ¶ 1) and is plaintiff's primary witness

---

[3] In their motion papers, Moving Defendants indicate that they are moving for summary judgment against the entirety of plaintiff's amended complaint (e.g., Defs.' Mem. at 9) but do not make any particular arguments related to plaintiffs' Counts V (for unjust enrichment) and VI (for an accounting). The Court has assumed, however, that Moving Defendants intended their motion and arguments to apply to those counts as well. On April 30, 2012, the Court issued an order notifying the parties of that assumption and giving plaintiff an opportunity, on or before May 4, 2012, to make additional arguments opposing summary judgment on those counts. (Docket No. 60.) Plaintiff chose not to take advantage of that opportunity.

2

regarding the events at issue in this lawsuit. Moving Defendants do not dispute that plaintiff had an exclusive recording agreement with Michael Dowell (p/k/a/ Cyssero) during the time period at issue in this action. (See id. ¶¶ 2, 4; see also Hentosh Aff. Ex. A. (indicating that the term of that agreement was from March 2004 to March 2006).) Moving Defendants also do not dispute that, pursuant to plaintiff's recording agreement with Dowell, it possessed certain rights, titles and interests in the copyright to any song composed by Dowell and the exclusive right to record and to distribute commercially any musical composition created by Dowell. (OSMF ¶ 3.)

Sometime during the period between March 2004 and March 2006, twelve songs were created: "Old Gunz," "It's On," "Lyrical Exercise Part II," "Stay Strapped," "Don't Cha" (included on the album "Ghost Unit"), "Poison Bananas," "Why You Smell Like Dat," and "Lyrical Exercise" (included on the album "You Know What it is"), "AM to PM" (included on the album "Stop Snitchin Stop Lying"), and "Hustla," "I'm a Rider," "Fire in Ya Eyes" (included on the album "The Black Wall Street Journal, Volume 1"). (See id. ¶¶ 7-8; Am. Compl. ¶ 20-24 (listing the Songs by album).) Plaintiff asserts that Dowell wrote the lyrics to each of the Songs (Pl.'s 56.1 Stmt. ¶ 8), but Moving Defendants point to testimony by Hentosh, owner of Affiliated, that he does not

3

know whether Dowell wrote all of the lyrics for each of the Songs (OSMF ¶ 8) and whether Taylor wrote any of the lyrics (id.).

Without citation to any admissible evidence, plaintiff asserts that defendants Taylor, Czar and BWS produced, distributed and sold the Songs through various third-party retailers for commercial gain. (See Pl.'s 56.1 Stmt. ¶¶ 13-14.) Moving Defendants deny that assertion and point to, inter alia, testimony from Hentosh conceding that he had no evidence that Taylor and Czar had distributed the Songs. (OSMF ¶¶ 13-14.) At his deposition, Hentosh also testified that he had encouraged distribution of the albums for promotional purposes. (Defs.' Mem. at 6; Jekielek Decl. Ex. A ("Hentosh Dep.") 75:2-76:3, 57:6-59:2; see also Hentosh Aff. ¶¶ 33-34.) In addition, Hentosh testified that he did not know of any evidence that Taylor, Czar or BWS had received any money from the commercial distribution or sale of the Songs. (Hentosh Dep. 37:7-39:5 (cited at Defs.' Mem. at 5).) Taylor also testified that he did not distribute, sell or receive income from the commercial exploitation of the Songs and did not authorize any third party to distribute the Songs on his behalf. (Defs.' 56.1 Stmt. ¶¶ 4-5 (citing Taylor Dep. 27:4-6, 34:25-35:3, 35:20-22, 41:7-42:3).)

In an attempt to counteract Hentosh's and Taylor's deposition testimony, plaintiff now submits an affidavit of

4

Hentosh, attaching screen shots from third-party websites that purportedly show the Songs offered for sale. (See Aff. of Richard Hentosh ¶ 22, Exs. B, G.) Moving Defendants object that such screen shots are not authenticated and, thus, are inadmissible. (See Reply Decl'n of Mark A. Samuel ¶¶ 6-7, 9.)

Moving Defendants do not, however, object to the admissibility of the evidence plaintiff puts forth with respect to defendant Goldtone. To the contrary, Moving Defendants admit that Goldtone manufactured three of the four albums (not "Black Wall Street, Volume 1") in question and delivered them to 101 for distribution. (OSMF ¶ 37; Pl.'s 56.1 ¶ 37 (citing Jekielek Decl. Ex. C ("Evans Dep.") 30:14-24); see also Evans Dep. 30:9-13.) They also admit that Goldtone and 101 entered two distribution agreements with respect to the three albums, under which 101 agreed to pay Goldtone a fee for each compact disc sold. (Id. ¶¶ 38-39.) They further concede that Goldtone actually received money "as a direct result of the sale" of those albums. (Id. ¶¶ 43-44; Defs.' Mem. at 6.) At his deposition, Damon Evans, the Executive Director of 101, testified that Goldtone never gave 101 to sell, and 101 never paid Goldtone for, any other albums. (Evans Dep. 39:14-24; see also Defs.' Mem. at 8.)

5

STANDARD OF REVIEW

Summary judgment is proper only "if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the judgment [is] warranted as a matter of law." Barkley v. Penn Yan Central School Dist., 442 Fed. Appx. 581, 581 (2011) (internal quotation marks omitted). "Although the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists, the non-moving party nonetheless must come forward with specific facts showing that there is a genuine issue of material fact for trial." Id. (internal citation and quotation marks omitted); accord Caracciola v. City of New York, No 95 Civ. 3896 (CSH), 1999 WL 144481, at *3 (S.D.N.Y. Mar. 17, 1999) ("the non-movant must offer 'concrete evidence from which a reasonable juror could return a verdict in his favor'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986))).

In order to defeat a properly supported motion, any evidence proffered by the non-movant must be admissible. Major League Baseball Prop., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008). It is well-settled that conclusory, speculative or self-serving assertions, set forth without admissible evidentiary support, are insufficient to create a genuine issue of fact. See, e.g., Barkley, 442 Fed. Appx. at 581, 585;

6

Clayborne v. OCE Bus. Servs., 381 Fed. Appx. 32, 34 (2d Cir. 2010); Savitsky v. Mazzella, 210 Fed. Appx. 71, 73 (2d Cir. 2006). Similarly, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City Dep't of Corrs., 84 F.3d 614, 619 (2d Cir. 2010); accord Clayborne, 381 Fed. Appx. at 35.

## RELEVANT PRINCIPLES OF COPYRIGHT LAW

To prove copyright infringement, a plaintiff must first demonstrate ownership of a valid copyright in the allegedly infringed work. E.g., Island Software and Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 260 (2d Cir. 2005). Plaintiff must then prove that the defendants "copied" the work without permission. E.g., Rogers v. Koons, 960 F.2d 301, 306 (2d Cir. 1992). The term "copy" has a broad meaning, defined by the Copyright Act and case law to include violation of any of the exclusive rights in the bundle conferred on the copyright holder. E.g., 17 U.S.C. § 501; Island Software and Computer Serv., 413 F.3d at 260. The bundle of exclusive rights includes the rights to make reproductions (what most people refer to colloquially as "copying"); to prepare derivative works; to distribute copies by sale, other transfer of ownership or by

7

rental lease or lending; and to perform or display the copyright work publicly. See 17 U.S.C. § 106.

Consent is a defense to copyright infringement. See, e.g., Love v. Kwitney, 706 F. Supp. 1123, 1131 (S.D.N.Y. 1989). Such consent may be express or "'implied from long acquiescence with knowledge of the infringement'" and will estop a plaintiff from pursuing an infringement claim. Id. (quoting Wiegand Co. v. E. Trent Co., 122 F.2d 920, 925 (3d Cir. 1941)).

In this case, it is undisputed that plaintiff has a valid copyright in the Songs. (OSMF ¶¶ 16-19.) Rather, the infringement dispute is over plaintiff's "copying" allegations that defendants are engaged in continued and unauthorized distribution and sale of the Songs. (Am. Compl. at ¶¶ 18, 41.) As to defendants Taylor, Czar and BWS, the Court finds that plaintiff has failed to raise a genuine issue of material fact to support such allegations in the face of defendants' motion. As to defendant Goldtone, the Court finds the opposite, except with regard to the "Black Wall Street, Volume 1" album.

## DISCUSSION

### Alleged Copyright Infringement by Taylor, Czar and BWS

Plaintiff is unable to create a triable issue of fact as to an unlawful act of "copying" by Moving Defendants Taylor, Czar and BWS. At his deposition, Hentosh, the owner of Affiliated, candidly testified that he had no evidence that Taylor and Czar

8

had distributed the Songs and that he did not know of any evidence that Taylor, BWS or Czar had received any money from the sale or commercial exploitation of the Songs. (OSMF ¶¶ 13-14; Hentosh Dep. 36:13-39:5.) Taylor confirmed that he did not distribute, sell, collect income from, or authorize any third party to distribute, the Songs on his behalf (Defs.' 56.1 Stmt. ¶¶ 4-5 (citing "Taylor Dep." 27:4-6, 34:25-35:3, 35:20-22, 41:7-42:3)). Yet, in opposition to Moving Defendants' motion, Hentosh affirms that "[t]he Songs were being sold from 2005 through the commencement of this litigation and are even being sold by some of the Defendants today." (Hentosh Aff. at ¶ 23.) He also attaches to his affidavit unauthenticated copies of screen shots (some obtained through an Internet archival site), purporting to show that the Songs were offered for sale by various third-party retailers. (Id. Exs. B, G.)

Neither the unauthenticated screen shots nor Hentosh's affidavit, however, is competent evidence to create a triable issue of fact with respect to Taylor, Czar or BWS's alleged commercial distribution. See Barkley, 442 Fed. Appx. at 581, 585; Hayes, 84 F.3d at 619; Clayborne, 381 Fed Appx. at 73; Salvino, 542 F.3d at 310.

Plaintiff has also failed to raise a triable issue of fact with respect to any claim for non-commercial distribution against those defendants. In addition to the evidence - and

9

inadmissible counter-evidence – just recited, Hentosh also testified that he had encouraged free distribution of the albums for promotional purposes. (See Hentosh Dep. 75:2-12 ("When I first heard about these albums, I promoted them as strictly mix tapes that the Game was putting out that featured my artist. . . . I was telling [people] to download [the albums] for free because that's what mixes tapes [sic] officially were."), 75:16-76:3; see also id. 57:6-59:2.) Similarly, in his affidavit, Hentosh states that he "was informed that the recordings were to be for promotional purposes only" and that "[t]he benefit t[o] Affiliated of allowing the limited scope of promotion and use of the Songs is clear . . . Cyssero's association with Taylor and BWS would help [him]." (Hentosh Aff. ¶¶ 33-34 (emphasis added).) At his deposition, Hentosh also testified that upon hearing the Songs on the Internet, he did not send any cease-and-desist letters to third-parties. (Defs.' Mem. at 6; Hentosh Dep. 47:9-48:16; see also Pl.'s Opposing Stmt. Material Facts ¶ 3.) Such evidence establishes that plaintiff acquiesced or implicitly (at least) consented to any free distribution by defendants. See Love, 706 F. Supp. at 1131.

Accordingly, plaintiff has failed to raise a triable issue of fact with respect to its claim for copyright infringement against Taylor, Czar and BWS.

10

Alleged Copyright Infringement by Goldtone

As set forth in the statement of facts above, Moving Defendants do not dispute that Goldtone arranged for 101 to distribute the "Ghost Unit," "You Know What It Is" and "Stop Snitchin Stop Lying" albums and then profited from their distribution. (OSMF ¶¶ 37-44; Defs.' Mem. at 6; see also Jekielek Aff. Exs. E, F.) Such admissions, alone, entitle plaintiff to judgment on its copyright infringement claim against Goldtone with respect to those albums. See 17 U.S.C. § 106(3). To the extent that Moving Defendants purport to argue that plaintiff acquiesced to Goldtone's sale of the Songs through 101, the Court is not convinced. (See Defs.' Mem. at 6-7.) Hentosh's testimony is clearly limited to distribution for promotional purposes, not exploitation for commercial gain. (See Hentosh Dep. 75:2-76:3; Hentosh Aff. ¶¶ 33-34.)

Plaintiff has failed to create a genuine issue of material fact, however, with regard to Goldtone's alleged infringement of the copyrights associated with the "Black Wall Street, Volume 1" album. Moving Defendants have put forth uncontroverted, competent evidence that Goldtone never provided that album to 101 for distribution and, in turn, never received payment

11

therefor from 101. (Defs.' Mem. at 8 (citing Evans Dep. at 39:14-24).)

Accordingly, with respect to Goldtone's alleged "copying," plaintiff's motion is granted as to the "Ghost Unit," "You Know What It Is" and "Stop Snitchin Stop Lying" albums, but Moving Defendants' motion is granted as to the "Black Wall Street, Volume 1" album.

Alleged Unjust Enrichment

All Moving Defendants prevail with respect to Count V, despite there being ample evidence that defendant Goldtone commercially distributed three of the four albums in question. The Court sua sponte dismisses that count for a reason unrelated to its merits,[4] namely it is preempted by the Copyright Act.

In Section 301, Congress laid out a test for determining when the Copyright Act exclusively governs a claim: (1) when the work is of the type protected by Section 102 or 103; and (2) when the claim "seeks to vindicate [a] legal or equitable right that [is] equivalent" to one of the exclusive rights protected by Section 106. See 17 U.S.C. § 301(a); Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 305-06 (2d Cir. 2004). Here, there is no question that the lyrics in the Songs

---

[4] If the Court were to consider the merits, it would also grant Moving Defendants' motion with respect to defendants Taylor, Czar and BWS because plaintiff's unjust enrichment claim is based on commercial exploitation of the copyrighted materials. As set forth above, plaintiff has failed to establish such commercial distribution with respect to those defendants.

12

constitute copyrightable subject matter under Section 102 of the Act. See 17 U.S.C. § 102(a)(2). Additionally, plaintiff's unjust enrichment claim, like its copyright claim, seeks to vindicate plaintiff's exclusive right to distribute the Songs for sale. See 17 U.S.C. § 106(3); (see also Am. Compl. ¶¶ 70-76). It is well-settled that the extra element of "enrichment" does not make that claim qualitatively different from a copyright infringement claim. See Briarpatch Ltd., 373 F.3d at 305-07 (2d Cir. 2004) (finding the Copyright Act to preempt an unjust enrichment claim). Thus, the Copyright Act exclusively governs plaintiff's allegations, and Count V is dismissed.

Accounting Claim

All Moving Defendants also prevail with regard to Count VI. That count requires plaintiff to establish commercial gain by the Moving Defendants. As set forth above, plaintiff has failed to create a triable issue of fact that Taylor, Czar or BWS has sold, or even offered for sale, the Songs in question. Accordingly, those defendants' motion is granted with respect to Count VI.

Moving Defendants' motion is also granted as to Goldtone. To the extent that plaintiff seeks an accounting of profits attributable to defendant Goldtone's infringement, such relief is properly pursued as a remedy, not a separate claim, under the Copyright Act. See 17 U.S.C. § 504(b); (see also Am. Compl.

13

Request for Relief V, VIII). Additionally, to the extent that plaintiff seeks an accounting of profits under New York state law, the Court sua sponte dismisses that claim as the record is devoid of any evidence that plaintiff and defendant Goldtone had a confidential or fiduciary relationship (nor does plaintiff allege as much in its complaint (see Am. Compl. ¶¶ 77-80)). See, e.g., Gersten-Hillman Agency, Inc. v. Heyman, 68 A.D.3d 1284, 1286 (3d Dep't 2009) ("It is well settled that an equitable action for an accounting will not lie in the absence of a fiduciary relationship between the parties."); Simons v. Ross, 765 N.Y.S.2d 859, 860 (1st Dep't 2003) ("In the absence of an existing partnership or other fiduciary relationship, plaintiff was not entitled to an equitable accounting.").[5]

## CONCLUSION

For the reasons set forth above, both Moving Defendants' motion and plaintiff's partial cross-motion are GRANTED in part and DENIED in part. This action shall now continue to a remedies-phase regarding defendant Goldtone's unlawful infringement of plaintiff's copyrights associated with the

---

[5] As set forth, supra, in footnote 3, the Court has notified plaintiff that it has construed Moving Defendants' motion to apply to plaintiff's Counts V and VI and has given plaintiff an opportunity to make any additional arguments opposing summary judgment on those counts. (Docket No. 60.) While the Court did not specifically notify plaintiff about the bases on which it now dismisses Counts V and VI (id.), plaintiff had ample opportunity to put forth any evidence, or make any arguments, it wished in opposition to summary judgment on such counts and chose not to do so, see, e.g., Webadviso v. Bank of America Corp., 448 F. Appx. 95, 96 (2d Cir. 2011).

14

"Ghost Unit," "You Know What It Is" and "Stop Snitchin Stop Lying" albums.

Plaintiff shall submit a letter the Court on or before May 21, 2012, setting forth which copyright remedy - actual damages and lost profits or statutory damages - it elects to pursue against defendant Goldtone.

The Clerk of the Court is directed to terminate the motion at Docket Number 44 and to terminate defendants Taylor, Czar and BWS from this action.

SO ORDERED

Dated:  New York, New York
        May 14, 2012

*K. B. Forrest*

KATHERINE B. FORREST
United States District Judge